SONNY J. OLSEN (USB #11308)
R. BRETT EVANSON (USB #12086)
**HEIDEMAN, MCKAY, HEUGLY & OLSEN L.L.C.**
2696 N. University Ave, Suite 180
Provo, Utah 84603
Telephone: (801) 812-1000
Fax: (801) 374-1724
Email: solsen@hmho-law.com
        bevanson@hmho-law.com
Attorneys for Plaintiff

---

### IN THE FOURTH JUDICIAL DISTRICT COURT, IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| **ECOSURE PEST CONTROL, INC.,** a California Corporation; | **COMPLAINT** |
| Plaintiff, | |
| vs. | |
| **ECLIPSE MARKETING, INC.,** a Utah Corporation; **HEBDA CORP, INC.,** a Utah Corporation; **JOHNNY HEBDA,** an individual; **JOHN DOES 1-10**; and **DOE CORPORATIONS 1-5.** | Case No. |
| | Judge: |
| Defendants. | |

COMES NOW Plaintiff EcoSure Pest Control, Inc. ("EcoSure"), by and through counsel of record of the law firm Heideman, McKay, Heugly & Olsen, and complains against Defendants as follows:

### PARTIES, JURISDICTION AND VENUE

1.    EcoSure is a California corporation with its principal place of business located in California.

1

2.       Defendant Eclipse Marketing, Inc., ("Eclipse") is a Utah corporation that, according to the Utah Department of Commerce website, is an active corporation in good standing with the State of Utah.

3.       Eclipse's principal place of business is located at 2601 North Canyon Road, Suite 201, Provo, Utah, 84604.

4.       Defendant Hebda Corp., Inc. ("HC") is a Utah corporation that, according to the Utah Department of Commerce website, is an active corporation in good standing with the State of Utah.

5.       Upon information and belief, HC is operating under a dba "Encite Marketing". For all intents and purposes, HC and Encite Marketing are one and the same and any reference to HC also includes the dba "Encite Marketing".

6.       HC's principal place of business is at 508 W. 1428 S., Orem, Utah 84058.

7.       Defendant Johnny Hebda, ("Hebda") is an individual domiciled and residing in Utah County, State of Utah.

8.       Hebda is the registered agent of HC.

9.       Jurisdiction is proper in this case pursuant to Utah Code Ann. §§ 78A-5-102(1) and 78B-3-205(1).

10.      Venue is proper in this case pursuant to Utah Code Ann. § 78B-3-307(1).

11.      John Does 1 through 10 are individuals and/or entities whose names and identities are currently unknown to Plaintiff.

12.      Doe Corporations 1-5 are entities whose names and identities are currently

2

unknown to Plaintiff.

     13.    Hebda was at all times pertinent either an owner, principal, and/or agent of Eclipse and HC, and each and every act alleged here as performed by him was performed as the agent of Eclipse and HC, and he performed within the scope and authority of such agency relationship.

### GENERAL ALLEGATIONS

     14.    Encite Marketing is the year 2010 recruiting program for HC.

     15.    EcoSure is a company involved in the pest control industry, and offers its product through door-to-door sales conducted by sales representatives.

     16.    The majority of EcoSure employees/sales representatives are college students who work for EcoSure during their summer break.

     17.    EcoSure's success is based on its ability to recruit highly motivated sales representatives to work as employees during the summer months and procure sales of the pest control products that EcoSure offers.

     18.    Eclipse is a company that solicits potential sales representatives for several different sales companies including pest control companies.

     19.    HC is a company that solicits potential sales representatives for several different sales companies including pest control companies.

     20.    Eclipse and HC do not sell and market its own product, but contract with other companies and provide the door-to-door sales representatives to these companies to sell their products.

3

21.    EcoSure does not employ the services of agencies to recruit representatives, but instead recruits its own workforce.

22.    In 2008, Hebda was the Vice President of Summer Sales for Eclipse, and was actively involved in recruiting potential summer sales representatives for Eclipse.

23.    In March 2008, EcoSure secured the services of four sales representatives to work for EcoSure during the 2008 summer.

24.    Thereafter, Hebda approached these individuals, who had previously signed employment contracts with EcoSure, and, using false statements and misrepresentations, convinced them to break their contracts and spend the summer working for Eclipse.

25.    Hebda attempted to convince them they should work for Eclipse by offering the EcoSure employees increased incentives and more lucrative commissions on their sales.

26.    Hebda and Eclipse were able to offer the more lucrative pay-structure as a direct result of the way Eclipse misclassifies their sales representatives as independent contractors rather than employees.

27.    Eclipse, HC, and several other companies involved in door-to-door sales, misclassify their summer employees as independent contractors, when pursuant to applicable law, they should be classified as employees.

28.    Eclipse and HC sales representatives lack the ability to control the means and methods of accomplishing their sales, but are required to do certain things such as attend daily training meetings, work a specific daily schedule, wear approved work clothing, and sign a non-compete clause to only work for one company.

4

29. Eclipse and HC provide their sales representatives all the equipment, materials and training to perform their job.

30. Upon information and belief, Hebda and HC has hired an accountant to determine whether their employees should be classified as independent contractors, and as a result of the analysis of the accountant, Hebda and HC have known at all times it was improper to classify their summer employees as independent contractors.

31. Eclipse, HC and Hebda knowingly misclassify their employees as independent contractors, which allows them to save 20% or more on overhead costs by avoiding having to pay workers compensation payments (6%), FICA payments (7.65%), state unemployment payments (3-6%), and federal unemployment payments (0.8%), etc.

32. As a result of misclassification, Eclipse, Hebda and HC make more per representative and consequently are able to recruit representatives at a higher rate Plaintiff cannot match.

33. These savings result in a reduced overhead for Eclipse and HC and allows them to offer more lucrative pay packages to potential employees.

34. In order to salvage these employees, EcoSure has been forced to offer increased compensation to these recruits, which results in lost profits for EcoSure.

35. This type of activity continued in the fall of 2008 as EcoSure began recruiting new potential employees.

36. In September 2008, EcoSure secured the services of two managers that worked on their sales teams for the 2008 summer.

5

37.     Shortly after securing these services, Hebda approached these managers and their sales teams to pirate their services and convince them to work for Eclipse.

38.     Once again, EcoSure was forced to offer increased compensation to these managers and their sales teams to retain their services.

39.     Even though EcoSure was able to retain these employees, the increased expenses resulted in lost profits and a developing pattern that severely impacts EcoSure's current and future profitability.

40.     In 2008 and 2009, on several occasions, EcoSure's employees were offered a more lucrative package by Hebda and Eclipse.

41.     The Defendants were able to offer the more lucrative packages due to the misclassification of their employees' status.

42.     As a result, EcoSure was put at an unfair disadvantage in terms of profitability, and HC and Eclipse gained an unfair advantage.

43.     One of the companies Eclipse provided sales representatives to was Terminix.

44.     Terminix is a company that sells pest control services door-to-door, much like EcoSure.

45.     However, in January 2009, Eclipse's deal with Terminix fell through, and several of the sales representatives who had agreed to work for Eclipse during the 2009 summer now no longer had summer employment.

46.     As a result of Eclipse's failed arrangement with Terminix, Hebda approached EcoSure and attempted to enter into a marketing agreement with EcoSure to provide additional

6

sales representatives for the 2009 summer.

47.     After considering the terms of Hebda's proposal, EcoSure declined the offer.

48.     Because Eclipse's deal with Terminix fell through and several of their sales representatives were looking for employment, some of Eclipse's employees entered into agreements with EcoSure to work for Ecosure during the 2009 summer.

49.     The sales representatives left Eclipse because they no longer had a Terminix product or Terminix location to sell for, and did this in January and February of 2009.

50.     Upon information and belief Eclipse marketing shut down their summer representative program and discontinued working with Hebda and HC.

51.     On or about April 20, 2009, seven days before the summer work season began, Hebda brokered a deal for HC with Preventive, another pest control company, whereby HC would provide Preventive with sales representatives to market Preventive's product throughout the summer.

52.     Now that Hebda had secured a product to sell, he needed to acquire sales representatives, but only had seven days to do so.

53.     In order to fill these positions, Hebda contacted several sales representatives who were already employed with EcoSure.

54.     Hebda offered these EcoSure employees unprecedented compensation packages in order to entice them to break their contractual agreements with EcoSure.

55.     Hebda offered the EcoSure employees guaranteed commissions of $20,000.00 regardless of their sales.

7

56.    Further, Hebda represented that HC would beat any compensation offer by
EcoSure by at least 10%.

57.    Hebda went so far as to guarantee one EcoSure employee that they would receive
no less than $90,000.00 for four months of work.

58.    Once again, HC was able to offer these higher incentive packages because it
misclassified its employees as independent contractors and did not pay the mandatory payroll
taxes and workers' compensation funds as required by law.

59.    EcoSure was unable to match the astronomical offers because EcoSure correctly
classified its sales representatives as employees and paid all the accompanying taxes and fees.

60.    As a result of Hebda's actions, EcoSure lost twelve sales representatives the week
before the summer sale season began.

61.    In anticipation of the sales representatives beginning work in the summer,
EcoSure hired additional employees and purchased new equipment and office space, including:

    a.    Three pest control technicians to service accounts generated by sales
       representatives.

    b.    Three technician trucks to provide the pest control service.

    c.    Cell phone plans for the technicians to use in the course of business.

    d.    Office supplies such as two computers, two desks, and two landline phones.

    e.    Additional square feet and apartments for the sales representatives to use.

62.    As a result of Defendants' actions, EcoSure will be force to carry the costs of the
unused technician trucks that sit idle until May of 2010.

63.     As a result of Defendant's actions, EcoSure carried the costs of the cell phone plans that were purchased for the summer employees to use which was $720.

64.     As a result of Defendant's actions, EcoSure carried the costs of computers ($1,400), desks ($600), landlines phone equipment ($500) and associated office supplies by having this equipment sit idle until May of 2010.

65.     As a result of Defendant's actions, EcoSure lost the use of approximately 750 expanded square feet of office space that cost them $9,600, and EcoSure was required to pay lease cancellation fees for the apartments they had secured for the summer employees.

66.     As a result of Defendants' actions, EcoSure was forced to absorb the cost of paying Technicians who no longer had work due to the loss of the summer sales representatives.

67.     As a result of Defendants' actions, EcoSure lost all the profits these sales representatives would have generated, and lost the benefit of the time and money spent training these sales representatives.

68.     As a result of Defendants' actions, EcoSure was unable to replace these sales representatives because of the short notice before the start of the 2009 sales season.

69.     EcoSure could not recruit new employees, train those employees and dispatch them to a location in another state in less than seven days.

70.     As a result of Defendants' actions, EcoSure was damaged in the ways identified above, plus the lost profits resulting from the increased compensation packages EcoSure was forced to offer in order to avoid losing additional employees that Hebda and HC attempted to poach.

71.    In addition, at least half of EcoSure's sale representatives usually return to work for them the following summers, thereby exacerbating the issue of lost revenues.

72.    As a result of Defendant's actions, EcoSure lost the profits and future earnings of these returning sales representatives as well as the period they were employed for.

73.    EcoSure anticipated yearly profits at over $1.2 Million dollars for the twelve representatives lost.

74.    Upon information and belief, Eclipse and/or HC did not pay all of the promised bonuses or the guaranteed commissions, and several of the individuals Eclipse solicited with these offers did not have employment for the 2009 summer in the door-to-door sales industry.

75.    HC and Hebda have openly communicated to the general public, via oral communications, and web postings, that they are attempting to get sales representatives to switch from EcoSure to HC and Hebda.

76.    HC and Hebda have told others they will operate at little or no profitability if it means they can take EcoSure representatives away from EcoSure.

77.    HC and Hebda are intentionally misrepresenting to potential sales representatives their average sales representative earnings in order to entice EcoSure employees to work for HC.

78.    HC and Hebda are offering greatly enhanced compensation packages exclusively to EcoSure representatives to get them to switch from EcoSure.

79.    Six of the EcoSure representatives that Hebda and HC offered the $20,000 guaranteed commissions to were terminated by Hebda and HC without paying the bonuses.

80.    HC and Hebda are knowingly communicating to potential sales representatives

that their employee status classification (i.e. as independent contractors) is legitimate, when in fact, their employee status classifications are illegal.

81.     HC and Hebda have told others they know they are operating unlawfully, but the government isn't doing anything about it so it is "no big deal."

82.     Hebda has encouraged potential representatives to entertain his offer and then go back to EcoSure and bargain for a higher percentage commission because to do so is "a win either way".

83.     In or about September 2009, Hebda told EcoSure that EcoSure "better keep [EcoSure's] representatives under lock and key for what [Hebda] is about to launch."

84.     In or about September 2009, Hebda told EcoSure "My new partners, that you will soon find out about, will help enable me to bring things to a greater level than ever before."

## FIRST CAUSE OF ACTION
### (Intentional Interference with Economic Relations)

85.     Plaintiff hereby incorporates and re-alleges all previous paragraphs as though fully set forth herein.

86.     Hebda, Eclipse, and/or HC intentionally interfered with EcoSure's existing and potential economic relations by actively poaching sales representatives who were under contract with EcoSure, or otherwise would have signed employment contracts with EcoSure.

87.     Hebda, Eclipse, and/or HC intentionally interfered with EcoSure's economic relations by offering EcoSure representatives exorbitant signing bonuses, guaranteed commissions, guaranteed salaries, and excessive commission rates on gross sales, and by

11

offering these unheard of compensation packages merely seven days before the 2009 summer

sales season began.

88.     Hebda, Eclipse, and/or HC accomplished these acts for an improper purpose,

which was to:

a.     Take EcoSure representatives from EcoSure, despite the fact that Hebda,

Eclipse, and/or HC did not intend to pay the representatives the bonuses,

commission rates, and salary's they promised the representatives;

b.     Hire as many representatives from EcoSure as possible, despite losing

money on the representatives, in order to damage EcoSure;

c.     Harm EcoSure's reputation;

d.     Cause EcoSure to absorb hard costs seven days before the 2009 sales

season began.

e.     Intimidate EcoSure.

89.     Hebda, Eclipse, and/or HC were not trying to make a profit by utilizing their

nefarious means.

90.     These exorbitant offers where improper as they were only possible as a direct

result of HC and/or Eclipse's violation of tax classification laws.

91.     These exorbitant offers were also improper because they resulted in fraudulent

misrepresentations to EcoSure sales representatives that the Defendants failed to honor, and

likely had no intention of honoring.

92.     Hebda's, Eclipse's and/or HC's actions caused direct injury to EcoSure in the

form of lost profits resulting from the increased compensation EcoSure had to provide to retain

sales representatives, lost sales representatives and the profits they generate, the loss of a sales

team for the 2009 summer, early lease termination costs, unused equipment, and the cost of

training provided to employees who never worked for EcoSure.

93.     These damages result in an amount that will be proven at trial, but not less than

$1.3 Million dollars.

## SECOND CAUSE OF ACTION
### (Intentional Interference with Contractual Relations)

94.     Plaintiff hereby incorporates and re-alleges all previous paragraphs as though

fully set forth herein.

95.     EcoSure entered into written employment contracts with several different sales

representatives to work the 2009 summer sales season.

96.     Eclipse, Hebda, and/or HC were aware of the existence of these contracts and still

chose to interfere with them.

97.     There is a reasonable certainty, but for Defendant's interference, these employees

would have continued in their contractual relationship and not broken the employment contracts

they had in place with EcoSure.

98.     Hebda, Eclipse, and/or HC intentionally interfered with EcoSure's contractual

relations by offering EcoSure representatives exorbitant signing bonuses, guaranteed

commissions, guaranteed salaries, and commission rates in excess of 60% of gross sales, and by

offering these unheard of compensation packages merely seven days before the 2009 summer

sales season began.

99.     Defendant's interference was for an improper purpose and improper means as set forth above.

100.    Hebda's, Eclipse's and/or HC's actions caused direct injury to EcoSure in the form of lost sales representatives and the profits they generate, the loss of a sales team for the 2009 summer, early lease termination costs, unused equipment, and the cost of training provided to employees who never worked for EcoSure.

101.    EcoSure was damaged as a direct result of these actions in an amount to be proven at trial, but not less than $1.3 Million dollars.

## THIRD CAUSE OF ACTION
### (Unfair Competition)

102.    Plaintiff hereby incorporates and re-alleges all previous paragraphs as though fully set forth herein.

103.    Hebda, Eclipse, and/or HC have, and continue to, knowingly, intentionally, or recklessly misclassifying their employees as independent contractors rather than employees.

104.    Doe Corporations 1-5 are entities who are knowingly, intentionally, or recklessly misclassifying their employees as independent contractors rather than employees.

105.    Doe Corporations 1-5 are entities who have engaged the services of Eclipse, Hebda, and/or HC to recruit representatives and knowingly, intentionally, or recklessly classifying them as independent contractors rather than employees.

106.    This misclassification of employees by Hebda, Eclipse, and/or HC and Doe

14

Corporations 1-5 results in unfair competition because they are able to offer more lucrative compensation packages to sales representatives because of their evasion of payroll taxes, unemployment taxes, and workers compensation payments due to their misclassification of employees.

107.    EcoSure, on the other hand, properly classifies its sales representatives as employees and complies with tax regulations, disabling them from competing with Hebda, Eclipse, and/or HC and Doe Corporations 1-5 for sales representatives.

108.    As a result of this unfair competition, EcoSure has been damaged in an amount to be proven at trial, but not less than $1.3 Million dollars.

### FOURTH CAUSE OF ACTION
### (FRAUD – HEBDA and HC)

109.    Plaintiff hereby incorporates and re-alleges all previous paragraphs as though fully set forth herein.

110.    On or about July 27, 2009, Hebda intentionally represented to another representative that EcoSure can afford to pay the rates Hebda and HC are quoting representatives, but EcoSure "just doesn't want to pay it."

111.    Hebda is intentionally representing to potential sales representatives that the average sales representative earnings for Preventive Pest Control are "heads and shoulders above EcoSure" claiming a summer sales average of "175 sales per representative."

112.    On or about September 12, 2009, Hebda told falsely a potential sales representative that he and Preventive Pest Control have taken some EcoSure representatives

15

because EcoSure is paying representatives 30-40% commission.

113.    Hebda is representing to potential sales representatives that his chargeback rate on accounts for the 2009 summer sale season was 7.3%, when in fact, these figures cannot be calculated until January 2010 at the earliest.

114.    Hebda has often falsely told potential sales representatives when he is recruiting that he works for the company he is recruiting for.

115.    Hebda is falsely representing to potential representatives he is an employee of Preventive Pest Control.

116.    Hebda is telling potential sales representatives the companies he markets for have no debt.

117.    Hebda has told recruits he will pay them a $20,000 signing bonus when in fact he had no intention of honoring his promises.

118.    At the time these false material misrepresentations were made, Hebda knew the representations were not true, or made them recklessly without knowledge of the truth as a positive assertion.

119.    In making the aforementioned misrepresentations, potential sales representatives have been either recruited away from EcoSure or been convinced to sign with EcoSure's competitors.

120.    As a result of Hebda's misrepresentations, EcoSure has been forced to raise its compensation levels to retain and recruit representatives, cutting into its profitability.

121.    The representatives Hebda recruited away from EcoSure, and who ultimately

signed with Hebda, HC, Eclipse and Doe Corporations 1-5, justifiably relied upon Hebda's misrepresentations, to EcoSure's detriment, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (SLANDER – HEBDA and HC)

122.   Plaintiff hereby incorporates and re-alleges all previous paragraphs as though fully set forth herein.

123.   Hebda has spoken with a number of EcoSure's potential and current representatives, and has told them untruths about EcoSure's owner, Dave Royce, its President, Vess Pearson, and its viability as a company, pay structure, debt level, and compensation averages for sales representatives.

124.   Hebda's untrue comments are malicious in nature.

125.   Hebda's untrue comments have harmed EcoSure's reputation and in doing so have caused EcoSure to lose profits in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (LIBEL – HEBDA and HC)

126.   Plaintiff hereby incorporates and re-alleges all previous paragraphs as though fully set forth herein.

127.   Hebda has posted untrue comments on the internet and in written exchanges with potential sales representatives about EcoSure's owner, Dave Royce, its President, Vess Pearson, and its viability as a company, pay structure, debt level, and compensation averages for sales representatives.

128.   Hebda's untrue written comments are malicious in nature.

17

129.    Hebda's untrue written comments have harmed EcoSure's reputation and in doing
so have caused EcoSure to lose profits, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief from the Court:

1.    Judgment be entered for all general, specific, and consequential damages suffered
by Plaintiff as a result of Defendants' conduct, in an amount to be determined at trial for their
improper interference with EcoSure's current and future business relations.

2.    Judgment be entered for all general, specific, and consequential damages suffered
by Plaintiff as a result of Defendants' conduct, in an amount to be determined at trial for their
improper interference with EcoSure's contractual relations;

3.    Judgment be entered for all general, specific, and consequential damages suffered
by Plaintiff as a result of Defendants' conduct, in an amount to be determined at trial for their
unfair competition with EcoSure;

4.    Judgment be entered for all general, specific, and consequential damages suffered
by Plaintiff as a result of Defendants' conduct, in an amount to be determined at trial for the
Fraud they have committed.

5.    Judgment be entered for all general, specific, and consequential damages suffered
by Plaintiff as a result of Defendants' conduct, in an amount to be determined at trial for the
Slander they have committed.

6.    Judgment be entered for all general, specific, and consequential damages suffered
by Plaintiff as a result of Defendants' conduct, in an amount to be determined at trial for the

Libel they have committed.

    7.       Judgment of actual damages, costs and attorneys' fees incurred by EcoSure

pursuant to Utah Code Annotated § 13-5a-103(1);

    8.       Judgment of punitive damages as appropriate pursuant to Utah Code Annotated §

13-5a-103(1);

    9.       For such other relief as this Court deems just and proper.


    SIGNED AND DATED this ⟨28th⟩ day of September, 2009.

    HEIDEMAN, MCKAY, HEUGLY & OLSEN, LLC


    SONNY J. OLSEN
    Attorney for Plaintiff

## COVER SHEET FOR CIVIL FILING ACTIONS

Page 1 of 3

### Party Identification (Attach additional sheets as necessary)

PLAINTIFF/PETITIONER

Name    EcoSure

Address  P.O. Box 1998
         Rancho Santa Fe, CA 92067

ATTY FOR PLAINTIFF/PETITIONER

Name  Sonny J. Olsen
Bar # 11308

Address Heideman, McKay, Heugly &
Olsen
2696 North University Ave., Suite 180
Provo, UT  84604  (801) 812-1000

PLAINTIFF/PETITIONER

Name

Address

ATTY FOR PLAINTIFF/PETITIONER

Name   R. Brett Evanson
Bar # 12086
Address  Heideman, McKay, Heugly &
Olsen
2696 North University Ave., Suite 180
Provo, UT  84604  (801) 812-1000

DEFENDANT/RESPONDENT

Name   Eclipse Marketing

Address   2601 N. Canyon Rd, Suite 201
          Provo, UT 84604

ATTY FOR
DEFENDANT/RESPONDENT
Name
Bar # _____
Address

DEFENDANT/RESPONDENT

Name   Hebda Corp., Inc.

Address 508 W. 1428 S.
        Orem, UT  84058

ATTY FOR
DEFENDANT/RESPONDENT
Name
Bar # _____
Address

DEFENDANT/RESPONDENT

Name    Johnny Hebda

Address   Utah County, UT

ATTY FOR
DEFENDANT/RESPONDENT
Name
Bar #
Address

### TOTAL CLAIM FOR DAMAGES

(*Amount in Controversy*)

$  1,000,000+ _____

### JURY DEMAND

# COVER SHEET FOR CIVIL FILING ACTIONS
## Page 2 of 3

❑  Yes          ☒  No

## SCHEDULE OF FEES: §78-2-301. CHECK ANY THAT APPLY.

(See Case Types for Filing Fees for Complaints other than Claim for Damages.)

**---- COMPLAINT FOR DAMAGES -----**

| | | |
|---|---|---|
| $75 | ❑ | Civil or Interpleader: $2000 or less |
| $185 | ❑ | Civil or Interpleader: $2001-$9999 |
| $360 | ☒ | Civil or Interpleader: $10,000 & over |
| $360 | ❑ | Civil Unspecified |

**---------- SMALL CLAIMS ---------**

| | | |
|---|---|---|
| $60 | ❑ | Small Claims: $2,000 or less |
| $100 | ❑ | Small Claims: $2,001-$7,499 |
| $185 | ❑ | Small Claims: $7,500-$10,000 |
| $50 | ❑ | Counterclaim: $2001-$7,499 |
| $70 | ❑ | Counterclaim: $2,001-$7,499 |
| $120 | ❑ | Counterclaim: $7,500-$10,000 |

**---------- MISCELLANEOUS ---------**

| | | |
|---|---|---|
| $250 | ❑ | Jury Demand |
| $8 | ❑ | Vital Statistics §26-2-25 per form |

## Please Check Only One Category

| Fee | | Case Type |
|---|---|---|
| | | **---------- APPEALS ----------** |
| $360 | ❑ | Administrative Agency Review |
| $225 | ❑ | Civil (78-7-35.(1)(h)) |
| $225 | ❑ | Small Claims Trial de Novo |
| | | |
| | | **-------- GENERAL CIVIL --------** |
| $360 | ❑ | Attorney Discipline |
| Sch | ❑ | Civil Rights |
| $0 | ❑ | Civil Stalking |
| $360 | ❑ | Condemnation/Eminent Domain |
| Sch | ❑ | Contract |
| Sch | ❑ | Debt Collection |
| Sch | ❑ | Eviction/Forcible Entry & Detainer |
| $135 | ❑ | Expungement (Fee is $0 under circumstances of §77-18-10(2)) |
| $360 | ❑ | Extraordinary Relief/Writs |
| $360 | ❑ | Forfeiture of Property |
| Sch | ❑ | Interpleader |
| Sch | ❑ | Lien/Mortgage Foreclosure |
| Sch | ❑ | Malpractice |
| Sch | ☒ | Miscellaneous Civil |

| | | |
|---|---|---|
| Sch | ❑ | Personal Injury |
| $360 | ❑ | Post Conviction Relief: Capital |
| $360 | ❑ | Post Conviction Relief: Non-capital |
| Sch | ❑ | Property Damage |
| Sch | ❑ | Property/Quiet Title |
| Sch | ❑ | Sexual Harassment |
| Sch | ❑ | Tax |
| Sch | ❑ | Water Rights |
| Sch | ❑ | Wrongful Death |
| $360 | ❑ | Wrongful Lien |
| Sch | ❑ | Wrongful Termination |
| | | |
| | | **------------- DOMESTIC -----------** |
| $0 | ❑ | Cohabitant Abuse |
| $310 | ❑ | Common Law Marriage |
| $310 | ❑ | Custody/Visitation/Support |
| $310 | ❑ | Divorce/Annulment |
| | ❑ | Check if child support, custody or visitation will be part of decree |
| | ❑ | Check if a Temporary Separation has been filed |
| $35 | ❑ | Foreign Domestic Decree |

# COVER SHEET FOR CIVIL FILING ACTIONS
## Page 3 of 3

| Fee | | Case Type |
|---|---|---|
| $360 | ❏ | Grandparent Visitation |
| $360 | ❏ | Paternity/Parentage |
| $100 | ❏ | Modify Divorce Decree |
| $310 | ❏ | Separate Maintenance |
| $35 | ❏ | Temporary Separation |
| $35 | ❏ | Uniform Child Custody Jurisdiction & Enforcement Act (UCCJEA) |
| $35 | ❏ | Uniform Interstate Family Support Act (UIFSA) |

------------- **JUDGMENTS** ------------

| $35 | ❏ | Abstract of Foreign Judgment |
|---|---|---|
| $50 | ❏ | Abstract of Judgment or Order of Utah Court/Agency |
| $30 | ❏ | Abstract of Judgment/Order of Utah State Tax Commission |
| $35 | ❏ | Judgment by Confession |

------------- **PROBATE** ------------

| $360 | ❏ | Adoption/ Foreign Adoption |
|---|---|---|
| $360 | ❏ | Conservatorship |

| $360 | ❏ | Estate Personal Rep - Formal |
|---|---|---|
| $360 | ❏ | Estate Personal Rep - Informal |
| $35 | ❏ | Foreign Probate/Child Custody Doc. |
| $360 | ❏ | Gestational Agreement |
| $360 | ❏ | Guardianship |
| $ 0 | ❏ | Involuntary Commitment |
| $360 | ❏ | Minor's Settlement |
| $360 | ❏ | Name Change |
| $360 | ❏ | Supervised Administration |
| $360 | ❏ | Trusts |
| $360 | ❏ | Unspecified Probate |

--------- **SPECIAL MATTERS** --------

| $35 | ❏ | Arbitration Award |
|---|---|---|
| $0 | ❏ | Determination Competency-Criminal |
| $0 | ❏ | Hospital Lien |
| $35 | ❏ | Judicial Approval of Document Not Part of a Pending Case |
| $35 | ❏ | Notice of Deposition in Out-of-State Case/ Foreign Subpoena |
| $35 | ❏ | Open Sealed Record |

**HEIDEMAN, MCKAY, HEUGLY, & OLSEN, L.L.C.**
OPERATING ACCOUNT
2696 NORTH UNIVERSITY AVENUE, SUITE 180
PROVO, UTAH 84604
(801) 812-1000

31132

TOWN & COUNTRY BANK
1464 South 1490 East Circle
St. George, UT 84790

97-310/1243

9/29/2009

PAY TO THE
ORDER OF    4th District Court                                              $  360.00

Three Hundred Sixty & No/100 Dollars                                          DOLLARS

4th District Court

TWO SIGNATURES REQUIRED FOR AMOUNTS OVER $1000.00

MP

MP

MEMO    Eco Sure Matter ID 09-3312-01

THIS DOCUMENT CONTAINS HEAT SENSITIVE INK - TOUCH OR PRESS HERE - RED IMAGE DISAPPEARS WITH HEAT

⑈⑈031132⑈⑈ ⑈⑈124303104⑈⑈    600 23 23⑈⑈

---

HEIDEMAN, MCKAY, HEUGLY, & OLSEN, L.L.C. Operating Account
9/29/2009    4th District Court                    4th District Court                    31132

| Invoice Date | Invoice No. | Description | Matter ID | Amount |
|---|---|---|---|---|
| 9/29/2009 | | Eco Sure Matter ID 09-3312-01 | 09-3312-01 | 360.00 |