IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| ECOSURE PEST CONTROL, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ECLIPSE MARKETING, INC., a Utah corporation HEBDA CORP, INC., a Utah corporation; JOHNNY HEBDA, an individual; JOHN DOES 1-10; and DOE CORPORATIONS 1-5,<br><br>    Defendants. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:09-CV-1108<br><br>Judge Dee Benson |

This matter is before the court on defendants Johnny Hebda and Hebda Corp, Inc.'s (collectively "Hebda") brief on the question of standing and plaintiff EcoSure Pest Control, Inc.'s ("EcoSure") memorandum of points and authorities regarding standing to assert the causes of actions set forth in its complaint.[1] (*See* Dkt. Nos. 65 and 66.) The court heard oral argument on the matter on July 9, 2010. Having considered the parties' arguments, memoranda, and the relevant law, the court enters the following Memorandum Opinion and Order.

## BACKGROUND

EcoSure is a pest control company that offers its products through door-to-door sales. The majority of EcoSure's sales representatives are college students who work during their summer break. EcoSure recruits and hires its own sales representatives. Hebda is a marketing company also involved in the pest control industry. Hebda contracts with pest control companies, such as Orkin and Terminix, to sell that company's products using sales

---

[1] At a hearing on March 1, 2010, the court requested that the parties submit briefs on the question of EcoSure's standing to challenge Hebda's classification of its sales representatives.

representatives that Hebda recruits. Because EcoSure and Hebda operate in the same markets, they are in direct competition.

For tax purposes, EcoSure classifies its sales representatives as employees; whereas, Hebda classifies its sales representatives as independent contractors. EcoSure contends that Hebda's classification of its sales representatives as independent contractors violates federal and state employment tax laws. According to EcoSure, by classifying its sales representatives as independent contractors, Hebda can avoid withholding and/or directly paying certain taxes for their sales representatives including income tax, social security, Medicare, unemployment tax, workers' compensation premiums, and unemployment contributions. EcoSure alleges that Hebda is misclassifying its sales representatives in order to gain an unfair competitive advantage whereby it can pay higher wages to recruits, obtain more qualified and competent sales representatives, reduce its overhead, and make more money. EcoSure claims that Hebda's alleged tax misclassification have caused it to lose potential recruits, EcoSure employees, and money. Hebda maintains it is not violating employment tax laws.

On September 29, 2009, EcoSure filed this civil action against Hebda and others. EcoSure's complaint asserted several causes of action that are primarily based on Hebda's alleged tax misclassification. These causes of action include (1) intentional interference with economic relations, (2) intentional interference with contractual relations, (3) and unfair competition. On July 6, 2010, EcoSure filed a first amended complaint that added an antitrust cause of action based on the same theory. EcoSure seeks injunctive relief and damages in excess of $1.3 million, plus costs and attorneys' fees.

The court must decide whether EcoSure has standing to assert claims against Hebda based on Hebda's alleged violation of federal and state employment tax laws. Hebda contends

that EcoSure lacks standing to challenge its internal tax classifications because there is no private cause of action that would empower EcoSure to enforce the tax laws against Hebda. EcoSure, on the other hand, argues that it has standing because it does not seek to enforce the tax laws against Hebda, but rather, EcoSure is simply requesting that the court determine whether Hebda is violating the tax laws in order to adjudicate EcoSure's claims.

## DISCUSSION

In every federal case, "the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11 (2004). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The question of standing involves two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement; and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction. *See id.* As to the former, a plaintiff must allege: (1) an injury in fact; (2) a causal relationship between the injury and the challenged act; and (3) a likelihood that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As to the latter, (1) the plaintiff must generally must assert his or her own legal rights; (2) the court must refrain from adjudicating generalized grievances most appropriately addressed by one of the other branches of government; and (3) the plaintiff's complaint must fall within the zone of interests protected by the law invoked. *See Allen v. Wright*, 468 U.S. 737, 751 (1984); *Utah Shared Access Alliance v. Carpenter*, 463 F.3d 1125, 1137 (10th Cir. 2006). If a plaintiff's claim fails either of the two strands, the plaintiff lacks standing.

The court will first address standing with regard to EcoSure's tortious interference claims and then Ecosure's unfair competition and antitrust claims. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991) ("standing is gauged by the specific common-law, statutory or constitutional claims that a party presents").

1.  <u>EcoSure's Standing to Bring Its Tortious Interference Claims</u>

The court finds that EcoSure lacks standing to assert its tortious interference claims based on Hebda's alleged violation of employment tax laws because this complaint falls outside the zone of interests protected by Utah's tortious interference laws. The question is whether the claim "fall[s] within the zone of interests protected by the law invoked." *Newdow*, 542 U.S. at 12. The purpose of Utah's tortious interference laws are to protect "against wrongful interference with advantageous economic relations." *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 301 (Utah 1982) (citation omitted). As its name indicates, the tort is committed when someone intentionally and improperly interferes with another person's known economic relations.[2] By its nature it is focused on activity that is improper and designed to interrupt what

---

[2] The tort of "interference with contract" addresses conduct which intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract. *See Leigh Furniture,* 657 P.2d at 301 (citation omitted). The "tort of intentional interference with prospective economic relations reaches beyond protection of interest in existing contract and protects a party's interest in prospective relationships of economic advantage not yet reduced to a formal contract (and perhaps not expected to be)." *Id.* at 302 (citation omitted). To sustain a claim for intentional interference with prospective economic relations, a plaintiff must establish (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff. *See Overstock.com, Inc. v. SmartBargains, Inc.*, 192 P.3d 858, 864 (Utah 2008) (citing *Leigh Furniture*, 657 P.2d at 304). "Improper purpose is established by a showing that the actor's predominant purpose was to injure the plaintiff." *Id*. (citation omitted). "Improper means are present when the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules." *Id*. (citation omitted).

4

would otherwise have been of economic advantage to the victim. A simple example would be A learning that B is about to buy C's house, and before the sale is finalized A misrepresents to B that C's house is full of termites and about to fall down. The sale falls through. C's tortious interference suit against A would be proper because A did something to (1) intentionally (2) interfere with C's economic opportunity. The elements of the tort focus on A doing something to directly interfere with B and C's business deal. For instance in *Leigh Furniture*, Leigh Furniture and Carpet Company, a corporation, sold a furniture business to Mr. Isom on a contract specifying a down payment for immediate possession, with the balance paid in monthly payments for ten years. 657 P.2d at 296. In the same contract Leigh leased Isom the first floor of the building containing the store and gave Isom an option to purchase the entire building once he had paid the balance on the business. *See id*. at 297. Soon after, Leigh openly regretted its contract with Isom because it wanted to sell the entire building for more money to a different buyer. *See id.* Leigh recognized the only way to sell the building was if Isom failed to perform under their contract. *See id.* at 296–301. Over the next three and one-half years, Leigh deliberately drove away Isom's customers, imposed heavy demands on Isom's time and financial resources, filed two groundless lawsuits against Isom, and breached its contractual duties for the purpose of injuring Isom's business. *See id.* at 300–01, 306. Eventually, Leigh's actions forced Isom out of business and Leigh reacquired the business and leased premises. *See id.* at 301. In *Leigh Furniture*, the Supreme Court of Utah found two bases to support a finding of improper interference by Leigh. *See id.* at 311. First, the court found that forcing a party to defend a groundless lawsuit, which can give rise to independent causes of action in tort for abuse of process and malicious prosecution, is an improper means of interference. *See id.* at 308–09. Second, the court found a breach of contract committed with the purpose of injuring the other

5

party's business relations is an improper means of interference. *See id.* at 310–11. In both instances of improper interference Leigh's actions were directed at Isom and his economic relations.

In the instant case plaintiff makes no claims of such direct interference. Plaintiff's entire case rests on whether defendant paid its fair share of taxes. Plaintiff makes the simple argument that if defendant would stop improperly declaring its sales representatives as independent contractors it would cease hurting plaintiff's business by stealing plaintiff's recruits, its employees and making more money than plaintiff. But it strains logic to think that everything one's competitor is doing that does not comply with state and federal laws and regulations, and thereby allows the competitor to earn more bottom-line profits, can provide a private cause of action for its competitors. There is nothing in the history of the tortious interference laws that indicate they were designed to reach that far, and plaintiff has provided no support in the form of case law or otherwise in support of its claims. In that regard this case appears to be unprecedented, and for good reason. Federal and state employment tax laws are revenue collection laws and are designed to fund the government. They were not enacted to foster economic relations for EcoSure's or any other company's benefit. Furthermore, it is instructive that neither the federal nor state tax laws provide a private cause of action for their enforcement.

Without any rights in relation to Hebda's employment taxes, EcoSure and its tortious interference claims fall outside the zone of interests protected by Utah's tortious interference laws. Similar conclusions have been reached in other jurisdictions with respect to the bounds of tortious interference and unfair competition laws. For example, in *Lexington Nat. Ins. Corp. v. Ranger Ins. Co.*, an insurer for bail bonds brought an action against a competitor, alleging that the competitor's failure to pay entire tax on gross premiums for bail bonds constituted deceptive

and wrongful business practice, intentional and negligent interference with the insurer's economic relationships and prospective economic advantage, and fraud. *See Lexington Nat. Ins. Corp. v. Ranger Ins. Co.*, 326 F.3d 416, 417–19 (3d Cir. 2003). After acknowledging the broad circumstances that can give rise to tort liability under New Jersey law, the United States Court of Appeals for the Third Circuit held that the insurer's allegations did not state a claim upon which relief could be granted because the competitor's payment of taxes was a matter between the State of New Jersey and the competitor. *See id.* at 420. Recognizing the potential parade of horribles, the court stated: "It should be clear that the implications of this case cannot be cabined. . . . If we hold that [plaintiff] has pled a claim on which a relief may be granted we will invite a tidal wave of litigation as businesses find opportunities to meddle in their competitors' affairs." *Id*. The court observed that a competitor's failure "to pay its taxes in full cannot create 'a private right of action for a third party to seek an audit of [its] return' on any of the theories [plaintiff] has advanced." *Id*. at 421. In *Intervest Mortgage Investment Co. v. Skidmore*, a lender sued a group of guarantors to collect on a loan guaranty. *See Intervest Mortgage Investment Co. v. Skidmore*, 632 F. Supp. 2d 1005, 1005 (E.D. Cal. 2009). The guarantors filed a counterclaim under California's Unfair Competition Law ("UCL") alleging that the lender's real estate lending policy violated a "safety and soundness" regulation promulgated by the Federal Deposit Insurance Corporation ("FDIC"). *See id.* at 1005–06. The federal district court enunciated the broad purpose of the UCL which was "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services," and then held that the guarantors fell outside the zone of interests sought to be protected by California's UCL because the UCL could not have been intended to provide for private enforcement of a FDIC regulation. *See id.* at 1006.

7

If this court held that EcoSure had standing to challenge Hebda's employment taxes as it seeks to do here, it follows that a business could assert a claim against a competitor because it is obtaining an economic advantage by violating the minimum wage act, health laws, environmental protection laws, or any other law or regulation. The court recognizes that Utah's tortious interference laws are broad, but there are limits.

Accordingly, the court finds that EcoSure lacks standing to challenge Hebda' classification of its sales representatives because a competitor's employment taxes fall outside the zone of interests sought to be protected by Utah's tortious interference laws.

2.  EcoSure's Standing to Bring Its Unfair Competition and Antitrust Claims

Similarly, the court finds that EcoSure lacks standing to assert Hebda's alleged tax misclassification as a basis for its unfair competition and antitrust claims because Hebda's employment taxes fall outside the zone of interests of the laws invoked. As explained above, under the zone of interests requirement, the question is whether the claim "fall[s] within the zone of interests protected by the law invoked." *Newdow*, 542 U.S. at 12 (citation omitted). The purpose of Utah's unfair competition laws is to protect individuals and businesses against unfair competition. *See* Utah Code Ann. § 13-5a-103. The primary purpose of the antitrust laws is to protect interbrand competition. *See State Oil Co. v. Khan*, 522 U.S. 3, 15 (1997). As with Utah's tortious interference laws, the unfair competition and antitrust laws were not intended to include a private right of action to challenge the legality of a competitor's employment tax practices. Therefore, EcoSure lacks standing to bring these claims based on Hebda's alleged violation of employment tax laws.

## CONCLUSION

Based on the foregoing, the court finds that EcoSure lacks standing to bring its (1) intentional interference with economic relations, (2) intentional interference with contractual relations, (3) unfair competition, and (4) antitrust claims based on Hebda's alleged violation of employment tax laws.

IT IS SO ORDERED.

DATED this 19th day of August, 2010.

Dee Benson
United States District Judge